JUDGE ROMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AGAR TRUCK SALES, INC.

                                  Plaintiff,                   Case No.

-against-

DAIMLER TRUCKS NORTH AMERICA LLC and     COMPLAINT
DETROIT DIESEL CORPORATION,                         WITH JURY DEMAND

                                Defendants.
------------------------------------------------------------------X

        Plaintiff Agar Truck Sales, Inc. ("Agar"), by its attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its Complaint against defendants Daimler Trucks North America LLC ("Daimler Trucks") and Detroit Diesel Corporation ("Detroit Diesel") alleges as follows:

## NATURE OF THE ACTION

        1.    Agar is a Freightliner and Detroit Diesel dealer located in the City of Yonkers, New York. This action concerns the defendants' attempt to terminate Agar's Freightliner and Detroit Diesel franchises in violation of section 463(2)(d) and (e) New York's Franchised Motor Vehicle Dealer Act, Veh. & Tr. L. § 460 *et. seq.* (the "Dealer Act") and in violation of the respective dealer agreements.

        2.    Agar seeks a declaratory judgment and permanent injunctive relief prohibiting Daimler Trucks and Detroit Diesel from terminating Agar's Freightliner and Detroit Diesel franchises because Daimler Trucks and Detroit Diesel lack due cause and are not acting in good faith as required by the Dealer Act and because there is no contractual basis under the respective dealer agreements to terminate Agar's franchises.

**PARTIES**

3.  Agar is a corporation organized and existing under the laws of the State of New York with its principal place of business in Westchester County, New York. Agar is a Freightliner and Detroit Diesel dealer. Agar is a "franchised motor vehicle dealer" as defined in section 462(7) of the Dealer Act.

4.  Daimler Trucks is a limited liability company organized and existing under the laws of the State of Delaware and is authorized to do business in the State of New York. Upon information and belief, Daimler Trucks is a wholly-owned subsidiary of Daimler AG, a German company. Daimler Trucks and Agar are parties to a Freightliner Trucks Dealer Sales and Service Agreement. Daimler Trucks a "franchisor" as defined in section 462(8) of the Dealer Act.

5.  Detroit Diesel is a corporation organized and existing under the laws of the State of Delaware. Upon information and belief, Detroit Diesel is a wholly-owned subsidiary of Daimler Trucks, or is an affiliate of Daimler Trucks by virtue of their common parent Detroit AG. Detroit Diesel and Agar are parties to a Detroit Diesel Corporation Direct Dealer Agreement that expires on December 31, 2015. Detroit Diesel is a "franchisor" as defined in section 462(8) of the Dealer Act.

**JURISDICTION AND VENUE**

6.  This Court has jurisdiction over this action under 28 U.S.C. § 1332 because it involves citizens of different states and the amount in controversy exceeds $75,000.00.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (a) the defendants are subject to this Court's personal jurisdiction with respect to this action; (b) a

substantial part of the events or omissions giving rise to this action occurred in this District; and (c) a substantial party of the property that is the subject of this action is situated in this District.

## THE FRANCHISED MOTOR VEHICLE DEALER ACT

8. The Dealer Act is a comprehensive regulatory scheme governing the relationship between automobile manufacturers and their New York dealers. It was enacted by the New York Legislature "in the exercise of its police power…in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." Dealer Act § 460.

9. Section 462(6) of the Dealer Act broadly defines a "franchise" as follows:

> …a written arrangement for a definite or indefinite period in which a manufacturer or distributor grants to a franchised motor vehicle dealer a license to use a trade name, service mark or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, by lease or otherwise and/or pursuant to which a franchised motor vehicle dealer purchases and resells or offers (as agent, principal, or otherwise) products associated with the name or mark or related components of the franchise.

10. Section 463 of the Dealer Act defines numerous practices by motor vehicle franchisors as "unlawful" and as "unfair trade practices" and prohibits such conduct "notwithstanding the term of any franchise contract." In pertinent part, this unlawful conduct includes terminating, cancelling, or refusing to renew "the franchise of any franchised motor vehicle dealers except for due cause, regardless of the terms of the franchise." *Id.* at § 463(2)(d)(1).

11. In the case of alleged sales performance deficiencies, the Dealer Act requires that the franchisor first "provide notification in writing to the dealer that the dealer has [180] days to correct dealer sales and service deficiencies or breaches and that the franchise is subject to

termination...if the dealer does not correct those deficiencies or breaches." *Id.* at § 463(2)(e)(3).

12. Following the 180-day cure period, "[a] franchisor shall notify a franchised motor vehicle dealer, in writing, of its intention to terminate, cancel or refuse to renew the franchisor of such dealer at least [90] days before the effective date thereof, stating the specific grounds for such termination, cancellation or refusal to renew." *Id.* at § 463(2)(d)(1).

13. Upon receipt of a 90-day termination notice, a dealer "may have a review of the ...threatened termination by instituting an action, as provided for in section [469 of the Dealer Act, which] shall serve to stay without bond, the proposed termination...until the final judgment has been rendered in an adjudicatory proceeding or action, as provided in section [469 of the Dealer Act]." *Id.* at § 463(1)(e)(2).

14. The Dealer Act specifies the issues to be determined in such a proceeding and assigns the burden of proof to the franchisor:

> The issues to be determined...are whether the franchisor's notice of termination was issued with due cause and in good faith. The burden of proof shall be upon the franchisor to prove that due cause and good faith exist. The franchisor shall also have the burden of proving that all portions of its current or proposed sales and service requirements for the protesting new motor vehicle dealer are reasonable. The determination of due cause shall be that there exists a material breach of a reasonable and necessary provision of a franchise...

*Id.* at § 463(2)(e)(2)

15. In the case of sales performance deficiencies, the Dealer Act further provides that "there shall be no due cause if the dealer substantially complies with the reasonable performance provisions of the franchise during [the 180-day] cure period and, no due cause if the failure to demonstrate such substantial compliance was due to factors which were beyond the control of such dealer." *Id.* at § 463 (2)(e)(3).

16. In addition, section 463(2)(u) of the Dealer Act prohibits franchisors from using "any subsidiary corporation, affiliated corporation, captive finance source or any other controlled corporation, partnership, association or person to accomplish what would otherwise be unlawful under this article on the part of the franchisor."

17. Finally, section 469 of the Dealer Act provides that a "dealer who is or may be aggrieved by a violation of this article shall be entitled to…sue for, and have, injunctive relief and damages" plus "an award [of] necessary costs and disbursements plus a reasonable attorneys' fee…"

## FACTS

### A. Background

18. By letter dated April 27, 2012, Daimler Trucks notified Agar that Agar had purportedly breached the sales performance requirements of Agar's Freightliner franchise and provided Agar a six (6) month cure period beginning April 30, 2012 and ending October 31, 2012.

19. According to the 180-Day Cure Letter, the "cure" consisted of developing and implementing a written truck sales plan during the cure period with the District Sales Manager that included nine (9) separate action items.

20. During the cure period Agar developed and implemented a truck sales plan including, with one exception, each of the action plan items specified in the 180-Day Cure Letter.

21. Notwithstanding the foregoing, over seven (7) months after the expiration of the cure period, by letter dated June 7, 2013, Daimler Trucks notified Agar that it had failed to correct the purported sales performance deficiencies cited in the 180-Day Cure Letter and

notified Agar that its franchise would terminate effective ninety (90) days after receipt of the letter (the "Freightliner 90-Day Termination Letter"). According to the Freightliner 90-Day Termination Letter, Agar's failed to cure its purported sales performance deficiencies and purportedly did not implement the cure demanded by Daimler Trucks.

22. Also by letter dated June 7, 2013, Detroit Diesel notified Agar that it would no longer conduct business with Agar effective September 3, 2013 (the "Detroit Diesel Termination Letter"). The Detroit Diesel Termination Letter did not cite any breaches by Agar of their Direct Dealer Agreement or any other purported performance deficiencies. Rather, and despite the fact that Agar and Detroit Diesel are parties to a Direct Dealer Agreement that expires on December 31, 2015, the Detroit Diesel Termination Letter asserted that the parties' dealer agreement expired on December 31, 2012 and that Detroit Diesel had only continued to conduct business with Agar on a day-to-day basis.

**B.    Daimler Trucks Lacks Due Cause to Terminate Agar's Freightliner Franchise.**

23. Each year Daimler Trucks sets sales objectives, either by number of vehicles or by market share. However, Daimler Trucks' sales requirements for Agar are unfair, unreasonable and arbitrary. This is seen both in the market territory assigned to Agar and the methodology used by Daimler Trucks in setting Agar's sales objectives.

24. Daimler Trucks assigned a market territory to Agar consisting of Bronx, Kings, New York, Queens and Westchester counties in New York and Fairfield County in Connecticut west of Highway 7.

25. However, the territory assigned to Agar is too large because it contains territory far away from Agar's location that is closer to other Freightliner dealers and that should either

be assigned to other dealers or remain unassigned. The improper assignment of territory unfairly inflates Agar's expected sales and deflates Agar's perceived sales performance.

26. For example, Kings and Queens counties are assigned to Agar; however the Freightliner dealer in Richmond Hill, Queens is obviously the closer dealer to that territory. Similarly, much of Fairfield Connecticut west of Highway 7, which is assigned to Agar, is plainly closer to the Freightliner dealer located in Milldale, Connecticut.

27. In addition to Agar's sales objectives being inflated due to improperly assigned territory, Daimler Trucks' method of calculating Agar's sales objectives is also fundamentally flawed. This is demonstrated by the fact that Daimler Trucks constantly changes its methodology and its calculations of Agar's sales objectives have varied wildly over the years.

28. For 2009, Agar's sales objective was 82 trucks.

29. For 2010, Daimler Trucks changed its methodology and Agar's sales objective suddenly more than <u>doubled</u> to 166 trucks.

30. For 2011, Agar's sales objective increased by an additional 60% to 269 trucks.

31. For 2012, Daimler Trucks changed its methodology a second time and imposed a market share objective rather than a sales objective. However, based on the market share objective, Daimler Trucks estimated that Agar would have to sell 473 trucks in 2012 to meet its market share objective!

32. For 2013, Daimler Trucks changed its methodology a third time, returning to a sales objective standard. For 2013, Agar's sales objective dropped dramatically to 42 trucks.

33. As set forth above, in a termination challenge, the Dealer Act places the burden of proof on Daimler Trucks to establish due cause to terminate Agar's franchise by showing that Agar materially breached a reasonable and necessary provision of the franchise. The Dealer Act

also places the burden of proof on Daimler Trucks to prove that all portions of its sales requirements for Agar are reasonable. Daimler Trucks cannot meet that burden.

34. Since 2009, Daimler Trucks changed its sales performance evaluation methodology three times and Agar's sales objectives have swung wildly during this period from a low of 42 trucks to a high of 473 trucks - and everywhere in between. Daimler Trucks' sales requirements for Agar are not merely unreasonable, they are patently absurd.

35. Moreover, the stated "cure" set forth in the 180-Day Cure Letter consisted solely of developing and implementing a truck sales plan that was to include specified action items. Agar complied in all material respects and thus satisfied the cure requirement.

36. Accordingly, Daimler Trucks lack due cause to terminate Agar's Freightliner the franchise.

C. **Detroit Diesel Lacks Due Cause to Terminate Agar's Detroit Diesel Franchise.**

37. Unlike most motor vehicle manufacturers, Daimler Trucks places its engine and powertrain brand in a separate sub-franchise from its Freightliner truck brand.

38. However, a motor vehicle franchise must include the engine and powertrain elements. A motor vehicle dealer could not possibly exist unless it could sell, service and provide parts for the engines and powertrains that power the vehicles it sells.

39. Approximately one-quarter of the Freightliner trucks sold by Agar are powered by Detroit Diesel engines.

40. Accordingly, Agar, as a Freightliner franchisee, must also be a Detroit Diesel franchisee.

41. Upon information and belief, Detroit Diesel is a wholly owned subsidiary of Daimler Trucks, or is an affiliate of Daimler Trucks because they share the same ultimate parent, Daimler AG.

42. Under the terms of Agar's Detroit Diesel franchise, Agar must be a Freightliner franchisee.

43. The definition of "franchise" contained in the Dealer Act encompasses not only sales of motor vehicles, but also "services related thereto" and "products associated with the name or mark or related components of the franchise".

44. Accordingly, Agar's Detroit Diesel franchise is a constituent part of Agar's Freightliner franchise and Detroit Diesel must comply with all aspects of the Dealer Act before it can terminate Agar's Detroit Diesel franchise. This includes Detroit Diesel providing notice and an opportunity to cure any alleged breaches and proving due cause as described in the Dealer Act.

45. Here, Detroit diesel did not precede its issuance of the Detroit Diesel Termination Letter with any notice of any breaches and did not provide a 180-day opportunity to cure.

46. Accordingly, Detroit Diesel may not terminate Agar's Detroit Diesel by reason of the protections afforded by the Dealer Act.

**D.  Detroit Diesel May Not Terminate Agar's Detroit Diesel Franchise Under the Terms of the Direct Dealer Agreement**

47. The Detroit Diesel Termination Letter does not assert that Agar breached any provisions of the parties' Direct Dealer Agreement.

48. Rather, the Detroit Diesel Termination Letter asserts that the Direct Dealer Agreement expired on December 31, 2012, that Detroit diesel had been dealing with Agar since

9

then on a day-to-day basis, and that, effective September 3, 2013, Detroit Diesel would no longer conduct business with Agar.

49. However, Agar and Detroit Diesel are parties to a Direct Dealer Agreement that expires on December 31, 2015, not 2012.

50. Accordingly, Detroit Diesel has no basis to cease conducting business with Agar effective September 3, 2013 and its threat to do so is an anticipatory breach of the Direct Dealer Agreement.

**FIRST CAUSE OF ACTION**
**(Violation of the Dealer Act: Declaratory Judgment and Injunctive Relief)**

51. Agar repeats and realleges the allegations of paragraph 1 through 50 as if set forth fully herein.

52. Daimler Trucks has violated the Dealer Act by attempting to terminate Agar's Freightliner franchise without due cause and without good faith in violation of sections 463(2)(d) and (e) of the Dealer Act.

53. Agar has been or may be aggrieved by this violation of the Dealer Act.

54. As result of the foregoing violations of the Dealer Act, Agar seeks and is entitled to a judgment: (a) declaring that Daimler Trucks' sales requirements for Agar are unreasonable; (b) declaring that Agar has materially complied with the reasonable and necessary provisions of its Freightliner franchise; (c) enjoining Daimler Trucks from terminating Agar's Freightliner franchise because it lacks due cause and is not acting in good faith; and (d) awarding Agar its reasonable attorneys fees, costs and disbursements as provided for in the Dealer Act.

## SECOND CAUSE OF ACTION
### (Violation of the Dealer Act)

55. Agar repeats and realleges the allegations of paragraph 1 through 54 as if set forth fully herein.

56. Detroit Diesel has violated the Dealer Act by attempting to terminate Agar's Detroit Diesel franchise without due cause and without good faith in violation of sections 463(2)(d) and (e) of the Dealer Act.

57. Agar has been or may be aggrieved by this violation of the Dealer Act.

58. As result of the foregoing violations of the Dealer Act, Agar seeks and is entitled to a judgment: (a) declaring that Detroit Diesel lacks due cause to terminate Agar's Detroit Diesel franchise; (b) enjoining Detroit Diesel from terminating Agar's Detroit Diesel franchise because it lacks due cause and is not acting in good faith; and (c) awarding Agar its reasonable attorneys fees, costs and disbursements as provided for in the Dealer Act.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment; Injunctive Relief; Specific Performance)

59. Agar repeats and realleges the allegations of paragraph 1 through 58 as if set forth fully herein.

60. Agar's Direct Dealer Agreement with Detroit Diesel expires on December 31, 2015.

61. Agar has not breached any provision of the Direct Dealer Agreement.

62. Accordingly, Detroit Diesel has no basis to cease doing business with Agar effective September 3, 2013, as threatened in the Detroit Diesel Termination Letter.

63. As a result of the foregoing, Agar seeks and is entitled to a judgment: (a) declaring that the Direct Dealer Agreement expires on December 31, 2015 between Detroit Diesel is in full force and effect and binding on the parties; (b) preliminarily and permanently

enjoining Detroit Diesel from ceasing to conduct business with Agar effective September 3, 2013 as threatened in the Detroit Diesel Termination Letter; and (c) directing that Detroit Diesel specifically perform the Direct Dealer Agreement expiring on December 31, 2015.

## JURY DEMAND

64. Agar demands a trial by jury of all issues herein so triable.

**WHEREFORE,** plaintiff Agar Truck Sales respectfully requests that judgment be entered granting the relief requested herein and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 5, 2013

                          **ROBINSON BROG LEINWAND GREENE
                          GENOVESE & GLUCK, P.C.**

                          By: _____
                                 Russell P. McRory
                          875 Third Avenue, 9th Floor
                          New York, New York 10022
                          (212) 603-6300
                          *Attorneys for Plaintiff Agar Truck Sales, Inc.*