

**FOLEY**

FOLEY & LARDNER LLP

September 24, 2013

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

CLIENT/MATTER NUMBER
015382-0281

**VIA ECF & FAX**

Honorable Nelson S. Román
Southern District of New York
300 Quarropas Street
White Plains, NY 10601
T: (914) 390-4177
F: (914) 390-4179

Re:  Agar Truck Sales, Inc. v. Daimler Trucks North America, LLC and Detroit Diesel Corporation, Case no. 13-CV-05471-NSR

Dear Judge Román:

We represent Defendants Daimler Trucks North America, LLC ("DTNA") and Detroit Diesel Corporation ("DDC," and, collectively "Defendants") in connection with the above-referenced matter. We write pursuant to your Individual Practice Rules to request a pre-motion conference and to set forth the principal bases for a proposed motion for partial summary judgment with regard to the causes of action involving DDC. Defendants intend to argue that 1) the statute referenced in the complaint, the New York Franchised Motor Vehicle Dealer Act (the "Dealer Act"), does not apply to DDC, and 2) there are no existing contracts between DDC and Plaintiff Agar Truck Sales, Inc. ("Agar" or "Plaintiff").

## RELEVANT BACKGROUND

This action arises out of contractual relationships between Agar and DTNA, involving a Freightliner Trucks Dealer Sales and Service Agreement (the "Freightliner Agreement"), and a relationship between Plaintiff and DDC, originally involving a Detroit Diesel Corporation Direct Dealer Agreement (the "Direct Dealer Agreement"). According to the Complaint, Defendants attempted to terminate their relationship with Agar in violation of both the Dealer Act and the respective agreements. Agar seeks a declaratory judgment and permanent injunctive relief prohibiting Defendants from terminating the relationships because, it claims, Defendants are not acting in good faith, as required under the Dealer Act, and there is no contractual basis to terminate under the agreements. Plaintiff brings three causes of action for declaratory judgment that 1) DTNA has violated the Dealer Act, 2) DDC has violated the Dealer Act, and 3) Plaintiff did not breach the DDC Direct Dealer Agreement; and seeks injunctive relief preventing further statutory violations and an order enjoining DDC from ceasing to conduct business with Plaintiff.

### I.   THE DEALER ACT DOES NOT APPLY TO DDC OR THE DIRECT DEALER AGREEMENT

The Dealer Act regulates the relationships between manufacturers of motor vehicles and their dealers. *See generally* 17-A N.Y. Veh. & Traf. Law §§ 460-73. A "motor vehicle" under the Dealer Act means, in relevant part, "every vehicle operated or driven upon a public highway which is propelled by a power other than muscular power," and certain snowmobiles, all-terrain vehicles, and personal watercraft. N.Y. Veh. & Traf. Law §§ 125; 462 (Consol. 2013). A "vehicle" is further defined under New York law

**⁞FOLEY**

FOLEY & LARDNER LLP
September 24, 2013
Page 2

as "[e]very device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." N.Y. Veh. & Traf. Law § 159.

DDC manufactures engines, not motor vehicles. Because the Dealer Act applies only to motor vehicles and not individual components of the vehicle, Plaintiff's Dealer Act claims against DDC must fail because the Act does not apply to the Direct Dealer Agreement or the relationship between Plaintiff and DDC. Nowhere in the Dealer Act does the law provide that it applies to engines or other component parts. *See generally* 17-A N.Y. Veh. & Traf. Law §§ 460-73. Absent such language, the Act cannot be interpreted as applying to engines. *See Barker v. State*, 681 N.E.2d 727 (Ind. Ct. App. 1997) (holding that an engine does not qualify as a motor vehicle under Indiana law because the definition of the term is a "vehicle that is self-propelled," and an engine is not self-propelled). Accordingly, the plain meaning of the statutory language at issue in this case compels a finding that the Dealer Act does not apply to engines, or, by extension, to the agreement and relationship between Plaintiff and DDC. *Commonwealth of the Northern. Mariana Islands. v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 50 (2013) ("[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used") (internal citations omitted).

<u>If Legislature Intended the Dealer Act to Apply to Engines, It Would Have Said So</u>

Even if the Dealer Act's definition were somehow ambiguous, and it is not, black letter rules of statutory construction would compel the same result. All 50 states have some version of the Dealer Act, and those legislatures who intended for their laws to apply to the relationship between the manufacturers and dealers of engines or other component parts as well as to motor vehicles themselves expressly included these terms in the definition of "motor vehicle" or incorporated other such inclusive provisions. *See, e.g.*, 815 Ill. Comp. Stat. 710/2(a) (2013) (including engines in the definition of "motor vehicle"); Ala. Code §8-20-3(14) (2013) (including engines in definition of "new motor vehicles"). In fact, some states, like Illinois, have even amended their Dealer Acts specifically to add engines and other component parts to that definition. 815 ILCS 710/2(a) ("Beginning January 1, 2010, the term 'motor vehicle' also includes any engine, transmission, ...").

Had the New York legislature similarly intended that engines be included within the definition of "motor vehicles", it would have said so, either when the Act was first established or, like Illinois, in a subsequent revision. Section 462, which includes the definition of "motor vehicle," has been amended five times since it took effect in July 1984, and the legislature has never amended this definition. *See* N.Y. Veh. & Traf. Law § 462; McKinney's Cons. Laws of NY, Book 1, Statutes § 193[a], at p. 359 (A legislature's failure to change wording in statute implies desire to retain previously understood meaning).

By contrast, while the New York legislature chose not to include engines within the purview of the Dealer Act, in other dealer relationship statutes it did choose to include engines within the products covered by the act. For example, the New York Vessel Dealer Agreements Act (the "Vessel Dealer Act") specifically includes engines in the definition of "vessel." N.Y. Gen. Bus. Law § 810 (2013) (a "vessel ...

2



FOLEY & LARDNER LLP
September 24, 2013
Page 3

shall include the hull, motor/engine, component parts, spars, sails and accessories of such watercraft"). The Vessel Dealer Act also includes engines in the definitions of "dealer" and "Manufacturer."[1] Again, there is no such language in the Dealer Act. That can only mean that this omission was intentional and, therefore, should be honored. *Northern Mariana Islands*, 21 N.Y.3d at 50 ("It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature."); *see also Orens v. Novello*, 99 N.Y.2d 180, 186 (2002) (when a legislature uses different terms within a statutory framework, courts may reasonably infer that a distinction is intended) (internal citations omitted).

## II. THERE ARE NO EXISTING CONTRACTS BETWEEN AGAR AND DDC

DDC could not have breached the Direct Dealer Agreement, and Agar currently has no contract rights against DDC, because the Direct Dealer Agreement expired in 2009, and DDC never signed the 2009 renewal. Pursuant to the express terms of the renewal contract, it is only effective as of the date DDC signs. The Direct Dealer Agreement also clearly provides that the "acceptance of orders from Dealer or the continuance of sale of Products and Parts ... after termination of this Agreement shall not be construed as a renewal." Thus, under New York law, Agar cannot maintain an action for breach of contract or any related claim because there is no longer any contract to be breached in the first instance. *See Twitchell v. Pittsford*, 106 A.D.2d 903, 904 (4th Dep't 1984) ("The fact that the parties continue to deal under some sort of informal arrangement does not, without more, mean that all the terms of the expired formal contract continue to apply."), *aff'd* 66 N.Y.2d. 824 (1985).

## CONCLUSION

Defendants submit that dismissal of the second and third causes of action, those involving DDC, is warranted, and respectfully request that this Court hold a pre-motion conference or, in the alternative, set a briefing schedule for the motion.

Respectfully,

Adam G. Pence

cc: Russell P. McRory (via Fax and E-mail)
Roberta F. Howell, Esq.

---

[1] "Dealer" shall mean "any person who (a) engages, in whole or in part, in the business of buying, selling, leasing, exchanging and/or repairing new and unused vessels and/or used vessels, or new and unused and/or used inboard engines, inboard/outdrives or outboard motors for vessels, and (b) has an established place of business for the sale, lease, trade, repair and/or display of vessels, inboard engines, inboard/outdrives or outboard motors." "Manufacturer" shall mean "any person engaged in the business of manufacturing or importing new and unused vessels, new and unused inboard engines, inboard/outdrives, outboard motors, or component parts and accessories therefor." N.Y. Gen. Bus. Law § 810.