ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

875 THIRD AVENUE

NEW YORK, NEW YORK 10022-0123

(212) 603-6300

FAX (212) 956-2164

September 30, 2013

Russell P. McRory
(212) 603-6328
rpm@robinsonbrog.com

**VIA ECF and FASCIMILE**
Honorable Nelson S. Román
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re: *Agar Truck Sales, Inc. v. Daimler Trucks North America,*
        *LLC and Detroit Diesel Corporation,* 13-CV-5471

Dear Judge Román:

  We represent plaintiff Agar Truck Sales, Inc. ("Agar") in the above referenced matter and write in response to defendants Daimler Trucks North America LLC's ("DTNA") and Detroit Diesel Corporation's ("DDC") pre-motion letter dated September 24, 2012. DTNA manufactures and distributes the Freightliner line of heavy trucks. DDC is a wholly-owned subsidiary of DTNA and manufactures engines, power train components and transmissions that go into Freightliner trucks, as well as trucks of other makes. DDC plans to file a motion to dismiss on the ground that New York's Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Tr. L. § 460 *et. seq.* (the "Dealer Act") does not govern its Direct Dealer Agreement with Agar, because DDC manufacturers engines, not motor vehicles.

  DDC's proposed motion would be futile, not only because DDC's narrow interpretation of the Dealer Act is not supported by the actual statutory language, but also because the determination DDC asks for cannot be made absent discovery and a developed factual record.

  DDC misconstrues the scope of the Dealer Act, which governs "franchises," not simply the distribution and sale of motor vehicles. Section 462(10) of the Dealer Act defines a "motor vehicle" primarily by reference to section 125 of the Vehicle and Traffic Law. Section 125, in turn, defines a "motor vehicle" as "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power..." By definition, a motor vehicle without an independent means of propulsion is not a motor vehicle; it is a hunk of metal. DDC asks this Court to read the word "motor" out of the term "motor vehicle."

  Section 462(6) of the Dealer Act defines a "franchise" as follows:

"...a written arrangement for a definite or indefinite period in which a *manufacturer* or distributor grants to a franchised motor vehicle dealer a license to use a trade name, service mark or related characteristic, and in which there is a community of interest in the marketing *of motor vehicles or services related thereto* at wholesale, retail, by lease or otherwise and/or *pursuant to which a franchised motor vehicle dealer purchases and resells or offers (as agent, principal, or otherwise) products associated with the name or mark or related components of the franchise.*"

Thus, the statutory definition of a "franchise" covers much more than simply a written arrangement between a manufacturer and a dealer governing the marketing and sale of motor vehicles – which, again, must have an independent means of propulsion – it also covers "services related thereto" and "products associated with the name or mark or related components of the franchise."

Furthermore, the Dealer Act defines a "manufacturer" as "any person, partnership, corporation, association, factory branch or other entity engaged in the business of manufacturing or assemblying [sic] new and unused motor vehicles for sale in this state." Again, a manufacturer is one who manufactures or assembles "motor vehicles," which must have a means of propulsion.

In addition to the definitions, the broad sweep of the Dealer Act is clearly seen in its substantive provisions, which expressly regulate more than an empty vehicle chassis, without an engine. These provisions include:

"To order or accept delivery of any motor vehicle or vehicles, *appliances, tools, machinery, equipment, parts or accessories therefor or any other commodity or commodities...*" Dealer Act § 463(1)(a).

"To order or accept delivery of any motor vehicle with *special features, appliances, accessories or equipment...*" *Id.* at § 463(1)(b)

"To sell or offer to sell *parts and/or accessories* to any franchised motor vehicle dealer at a lower actual price therefor..." *Id.* at § 463(2)(i)

"To fail to indemnify and hold harmless its franchised motor vehicle dealers against any losses or...where the action, claim or proceeding directly relates to the manufacture, assembly or design of *new motor vehicles, parts or accessories* or other functions of the franchisor including, without limitation, *the selection by the franchisor of parts or components* for the vehicle." *Id.* at § 463(2)(n)

"...*supplies, parts, equipment* and furnishings purchased from the franchisor *or its approved sources* and special tools." *Id.* at § 463(2)(o)(1)

"A franchised motor vehicle dealer shall be entitled to sell *and service* all the manufacturer's new motor vehicles which the franchised motor vehicle dealer is

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

authorized to sell pursuant to the franchise.... Franchised motor vehicle dealers who are presently parties to a franchise with the franchisor shall be offered the right to sell *and service* any new motor vehicle product of the same line make owned or generally distributed by such franchisor's franchised motor vehicle dealer...." *Id.* at § 463(2)(w)

The Dealer Act, by its express terms, regulates not simply the sale of motor vehicles, but also the sale of parts, equipment, components, and accessories for those motor vehicles. A franchise includes not only the right sell motor vehicles, but also the right to service those vehicles. The right service motor vehicles must include the right to service the engines propelling the motor vehicle. In the "Components" section of the Freightliner website, DTNA touts the availability of Detroit Diesel engines, transmissions and axles in its trucks.[1]

Again, DDC is a wholly owned subsidiary of DTNA and the Dealer Act expressly addresses this relationship, by declaring it unlawful for franchisors "[t]o use any subsidiary corporation, affiliated corporation, captive finance source or any other controlled corporation, partnership, association or person to accomplish what would otherwise be unlawful conduct under this article on the part of the franchisor." Permitting DTNA to cause its wholly-owned subsidiary DDC to terminate its franchise with Agar outside of the protections of the Dealer Act is precisely the sort of conduct the Legislature intended to address. Stripping from Agar its ability to provide authorized warranty service on the engines and power trains in the Freightliner trucks it sells and to offer factory Detroit Diesel parts would be tantamount to a termination of its Freightliner franchise.

But if the broad statutory language were not enough, Agar's Freightliner franchise agreement with DTNA – which indisputably is a "franchise" subject to the Dealer Act – contains express provisions incorporating Detroit Diesel requirements. Specifically Agar's Freightliner franchise agreement requires that Agar: a) maintain certain Detroit Diesel engine certifications, b) maintain certain Detroit Diesel transmission certifications; c) requires that Agar purchase a certain dollar amount of Detroit Diesel parts; and d) requires that Agar maintain a certain inventory of Detroit Diesel parts. The Dealer Act expressly regulates the purchase and pricing of parts.

Lastly, there is a question of fact over whether Agar's and DDC's agreement expires on December 31, 2015. DDC asserts that the last dealer agreement expired in 2009. However, as set forth in the Complaint, in late 2012, DDC offered Agar a dealer agreement that expires on December 31, 2015, which Agar executed and returned to DDC. DDC never indicated in any way that it never countersigned the agreement (as it now apparently asserts). In fact, DDC remained silent until the day it issued the termination notice and the parties always operated as if they had a written agreement.

In short, given the broad language of the statute; given the fact that the Freightliner and Detroit Diesel brands are intertwined not only in Freightliner public marketing materials but also in Agar's Freightliner franchise agreement; given the fact that DDC offered Agar a dealer agreement expiring on December 31, 2015 which Agar executed and returned and under which

---

[1] *See e.g.* http://www.freightlinertrucks.com/Trucks/Components/Engines/Detroit-Engines/

3

{00643338.DOC;1 }

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

the parties actually operated; and given the fact that there has been no discovery on the nature and extent of relationship between DTNA, DDC and their respective dealers and franchisees, a motion to dismiss Agar's claim against DDC at this early stage would be futile and a waste of the Court's and the parties' time and resources.

Respectfully submitted,

Russell P. McRory

RPM:ns

4

{00643338.DOC;1 }