UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AGAR TRUCK SALES, INC.,

                Plaintiff,

   -against-

DAIMLER TRUCKS NORTH AMERICA, LLC,
and DETROIT DIESEL CORPORATION,

                Defendants.
-----------------------------------------------------------X

13-cv-5471 (NSR)

MEMORANDUM OPINION
AND ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Agar Truck Sales, Inc. ("Plaintiff") commenced the instant action against Daimler Trucks North America, LLC ("DTNA") and its wholly owned subsidiary, Detroit Diesel Corporation ("DDC") (collectively "Defendants"), seeking monetary damages, declarative and injunctive relief for alleged violations of the New York Franchised Motor Vehicle Dealer Act ("Dealer Act"), N.Y. Veh. & Traf. L. ("VTL") §§ 460–73, and seeking specific performance of a contract. In its Complaint, Plaintiff asserts Claim 1 against DTNA for attempting to terminate Plaintiff's Freightliner truck franchise without due cause or good faith; Claim 2 against DDC for attempting to terminate Plaintiff's Detroit Diesel truck engine franchise without due cause or good faith; and Claim 3 against DDC for a declaration that the franchise contract is in full force and effect and for specific performance thereof.

    DDC now moves pursuant to Rule 12(b)(6) to dismiss the claims against it for failure to state a claim upon which relief may be granted. DDC asserts that (1) the Dealer Act does not apply to it because it is not a "franchisor" as defined therein, and (2) under the terms of the DDC franchise contract, its decision not to execute the contract renewal precludes Plaintiff's assertion that the renewal is in full force and effect. DTNA does not join this motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/1/2014

Plaintiff cross-moves for leave to file an amended complaint which supplements factual allegations and asserts Claim 2, unlawful termination of the Detroit Diesel franchise, against both DDC and DTNA.  In reply, DDC asserts the proposed amended complaint would be futile—because Plaintiff concedes DDC is not a "franchisor" under the Dealer Act and because under Michigan law, which governs the contract, no contract exists when a party does not sign a written agreement after manifesting an intent not to be bound until execution.  For the following reasons, DDC's motion to dismiss is granted.  Plaintiff's cross-motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND[1]

Plaintiff is a tractor trailer dealer located in Yonkers, New York.  DTNA exists under Delaware law and is authorized to do business in New York.  DDC is a Delaware corporation authorized to do business in New York.  Plaintiff has apparently been a franchisee of DTNA's Freightliner trucks ("Freightliner franchise") for many years.  Plaintiff is also a franchisee of DDC's Detroit Diesel brand of engines ("Detroit Diesel franchise") manufactured for installation in Freightliner trucks.  Plaintiff alleges that one quarter of the Freightliner trucks it sells have Detroit Diesel engines.  Plaintiff's proposed amended complaint asserts that one particular Freightliner model comes exclusively with Detroit Diesel engines.  The most recent renewal of Plaintiff's Freightliner franchise was executed by Plaintiff's agent on December 29, 2009, and by DTNA's agent on January 11, 2010, and expires on December 31, 2014.  Plaintiff and DDC renewed the Detroit Diesel franchise at the same time ("the 2009 renewal"), which was to expire December 31, 2012.  The same individual signed both franchise renewals on behalf of DTNA and DDC, respectively.  Despite its expiration date, the 2009 renewal could be renewed further

---

[1] The following facts are taken from allegations in the Complaint and documents incorporated by reference therein.

by a written agreement executed by both parties before December 31, 2012.  However, it prohibits construing any other act by DDC as a renewal for another term or a waiver of termination.

On November 15, 2012, DDC sent Plaintiff another renewal contract for the Detroit Diesel franchise ("the 2012 renewal"), which would expire December 31, 2016.[2]  On November 19, 2012, Plaintiff's agent executed the contract.  DDC did not sign the 2012 renewal, although DDC continued to sell products to Plaintiff.  The 2012 renewal agreement states it would come into force "only with [DDC]'s written acknowledgement of receipt of its copy of this Agreement."  (MacWhirter Decl. Ex. E, Direct Dealer Agreement art. 5.)  Both the 2009 and 2012 renewal agreements are governed by Michigan law.

In the Freightliner franchise agreement, Plaintiff's assigned market territory for truck sales includes Bronx, Kings, New York, Queens, and Westchester Counties in New York, and a portion of Fairfield County in Connecticut.  Plaintiff alleges that another dealer in Richmond Hill, Queens, is closer to Queens and Kings Counties, and a third dealer in Milldale, Connecticut, is closer to the portions of Connecticut assigned to Plaintiff.  Plaintiff's assigned Freightliner sales objectives varied, rising from 82 trucks in 2009 to 166 trucks in 2010, 269 trucks in 2011, and 473 trucks in 2012, then falling to 42 trucks in 2013.  Plaintiff did not meet the sales objectives in any of these years, though Plaintiff asserts the requirements were unfair, unreasonable, and arbitrary.

On April 27, 2012, DTNA sent a letter notifying Plaintiff that it had breached the sales performance requirements of the Freightliner franchise and providing Plaintiff a six-month cure period beginning April 30, 2012.  The letter allegedly required Plaintiff to develop a truck sales

---

[2] The Complaint alleges the 2012 renewal extended the franchise relationship only through December 31, 2015.

3

plan that included nine action items.  Plaintiff alleges it satisfied each action item but one.  On June 7, 2013, DTNA notified Plaintiff by letter that Plaintiff had failed to correct the sales performance deficiencies identified in April 2012.  Specifically, DTNA asserted that Plaintiff failed to attain its market share and failed to promote and sell Freightliner trucks through systematic contacts.  DTNA listed ten action items supposedly identified in the April 27, 2012, letter and briefly explained how each was not met.  Accordingly, DTNA asserted it would terminate Plaintiff's Freightliner franchise 90 days after Plaintiff's receipt of the June 7 letter.

Also on June 7, 2013, DDC notified Plaintiff it would no longer conduct business with Plaintiff as of September 3, 2013.  DDC asserted that the Detroit Diesel franchise agreement had expired December 31, 2012, and that DDC had continued to conduct business with Plaintiff on a day-to-day basis since that time.  DDC's letter did not assert any contract breach or other failure to perform by Plaintiff.  On August 6, 2013, Plaintiff filed the instant action.

## II. LEGAL STANDARDS

### A. Motion to Amend Pleadings

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court.  Fed. R. Civ. P. 15(a)(1)–(2).  If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non[-]movant of prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843,

856 (2d Cir. 1981)); *accord Block*, 988 F.2d at 350.  Thus, if the underlying facts and circumstances upon which the moving party relies support the claim or defense sought to be added, the party should generally be allowed to test that claim or defense on the merits.  *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007).  Nonetheless, leave to amend may properly be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *AEP Energy*, 626 F.3d at 725–26 (quoting *State Teachers Ret. Bd. v. Fluor Corp*, 654 F.2d 843, 846 (2d Cir. 1981)); *accord Ruotolo*, 514 F.3d at 191 (quoting *Foman*, 371 U.S. at 182).

### B. Motion to Dismiss

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  A claim is facially plausible when the factual content pleaded allows a court "to draw a

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  When determining the plausibility of a complaint, "[i]n addition to allegations in the complaint itself, the Court may consider documents attached as exhibits and documents incorporated by reference in the complaint." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

## IV. FRANCHISED MOTOR VEHICLE DEALER ACT

The Dealer Act protects the investments of motor vehicle franchisees and the general public by making certain behavior by motor vehicle franchisors unlawful. *See generally* VTL §§ 460, 463.  Among other prohibitions, it is unlawful for a "franchisor" to "terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise," *id.* § 463(2)(d)(1), and to "withhold from a franchised motor vehicle dealer a new motor vehicle product of the same line make which the franchised motor vehicle dealer is authorized to sell under its franchise," *id.* § 463(2)(w).  Where a franchisor wishes to terminate a franchise, the franchisor must first provide written notification thereof and allow 180 days for the franchisee to cure "sales and service performance deficiencies or breaches" in lieu of termination. *Id.* § 463(2)(e)(3).  The franchisee is given a right of action against the franchisor, *id.* §§ 463(2)(e)(1), 469(1), to seek a determination of "whether the franchisor's notice of termination was issued with due cause and in good faith," *id.* § 463(2)(e)(2).  In such an action, the franchisor bears the burden of demonstrating both "that

due cause and good faith exist" and "that all portions of [the] . . . sales and service requirements for the protesting franchise[e] . . . are reasonable." *Id.*

DDC asserts in its motion to dismiss that the Dealer Act's prohibitions in VTL § 463 do not apply to it because it is not a "franchisor" as defined in VTL § 462.  Plaintiff concedes in its opposition papers that DDC is not a "franchisor," yet it nonetheless asserts DDC should be held liable because the Detroit Diesel franchise is part and parcel of the Freightliner franchise, because DDC's actions must be imputed to DTNA under VTL § 463(2)(u),[3] because the definition of "franchise" encompasses "related components of [a] franchise," VTL § 462(6), and because federal anti-trust law treats corporate parents and subsidiaries as one actor.

In New York, a court determining the scope of a statute must begin its inquiry with the statutory language itself.  *Northern Marianas Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 60 (2013).  "[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used."  *Id.* (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 41 N.Y.2d 205, 208 (1976)).  In so doing, a court "should attempt to effectuate the intent of the Legislature."  *Id.* (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 582 (1998)) (internal quotation marks omitted).  Notably, "the failure of the Legislature to include a term in a statute is a significant indication that its exclusion was intended."  *Id.* (citing *People v. Finnegan*, 85 N.Y.2d 53, 58 (1995); *Pajak v. Pajak*, 56 N.Y.2d 394, 397 (1982)).

Turning to the definitions in the Dealer Act, a "franchise" is

> a written arrangement for a definite or indefinite period in which a *manufacturer or distributor* grants to a franchised motor vehicle dealer a license to use a trade

---

[3] This subsection makes it unlawful for any franchisor "[t]o use any subsidiary corporation . . . to accomplish what would otherwise be unlawful conduct under this article on the part of the franchisor."

> name, service mark or related characteristic, *and* in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, by lease or otherwise and/or pursuant to which a franchised motor vehicle dealer purchases and resells or offers (as agent, principal, or otherwise) products associated with the name or mark or related components of the franchise.

VTL § 462(6) (emphasis added). A "franchisor" is a "manufacturer, distributor, distributor branch or factory branch, importer or other person, . . . which enters into or is presently a party to a franchise with a franchised motor vehicle dealer." *Id.* § 462(8). Thus, to have a franchise between Plaintiff[4] and DDC, DDC must be either a manufacturer, a distributor, or a branch thereof. *Id.* § 462(2), (4), (6), (8).

A manufacturer is an individual or "entity engaged in the business of manufacturing or assembl[]ing new and unused *motor vehicles* for sale in" New York. *Id.* § 462(9) (emphasis added). Similarly, a distributor is a "person who primarily offers, sells or distributes new *motor vehicles* to franchised motor vehicle dealers or maintains distributor representatives within the state." *Id.* § 462(1) (emphasis added). A vehicle is a "*device in, upon, or by which* any person or property *is or may be transported* or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." *Id.* § 159 (emphasis added). A motor vehicle is a "*vehicle* operated or driven upon a public highway which is propelled by any power other than muscular power." *Id.* § 125; 462(10)(a) (emphasis added). Noticeably absent from the definitions of "vehicle" and "motor vehicle" is the term "engine." This is, therefore, a significant indication that the New York legislature intended the term to be excluded from those definitions and, thus, from the definitions of "manufacturer" and "distributor" under the Dealer Act. *Canadian Imperial Bank*, 21 N.Y.3d at 60. Moreover, a plain reading of the above

---

[4] No one disputes that Plaintiff, the franchisee, qualifies as a "franchised motor vehicle dealer." VTL § 462(7)(a) (citing VTL § 415).

definitions excludes "engine" from the term "vehicle" because an engine alone, without the rest of the device, is incapable of transporting persons or property. *Id.*

Accordingly—and as Plaintiff concedes—DDC is not a "franchisor" under the Dealer Act because it manufactures engines and not motor vehicles. For the same reason, the Detroit Diesel franchise agreement is not a "franchise" under the Dealer Act. Thus, as a matter of law, DDC cannot be held liable as a franchisor under VLT § 463. DDC's motion to dismiss must be granted as to Claim 2.

The proposed amended complaint would be futile as to the allegations against DDC for this claim, and leave to amend must therefore be denied. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010). However, as DTNA may be held liable for DDC's actions under § 463(2)(u), Plaintiff's motion to amend the complaint must be granted to the extent of allowing Plaintiff to allege facts supporting DTNA's liability for DDC's purported misbehavior on Claim 2. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989).

Plaintiff's other arguments concerning the Detroit Diesel franchise being part of the Freightliner franchise and the definition of "franchise" including "components" thereof merely support the contention that DTNA is liable for the actions of DDC, its subsidiary. VTL § 463(2)(u). Plaintiff's argument premised on "certain antitrust concepts" being applicable is unavailing, as the provision allowing franchisors to assert as a defense[5] to allegations of discriminatory pricing[6] their good faith in meeting "an equally low price of a competitor"[7] in no

---

[5] VTL § 463(3) ("[T]here shall be available to the franchisor all of the defenses provided for under section thirteen-b of title fifteen, United States code.").

[6] VTL § 463(2)(g)–(i).

way makes applicable general federal antitrust law, which considers parents and subsidiaries to be a single actor. *Cf. Canadian Imperial Bank*, 21 N.Y.3d at 60 (failure to include term in statute indicates legislative intent to exclude such).

## V. EXISTENCE OF CONTRACT

DDC asserts that the 2012 renewal of the Detroit Diesel franchise agreement is not in force because DDC did not sign it. DDC relies on two provisions in the 2009 renewal for its position. The first states that the 2009 renewal "will expire without any action by either" party but "may be continued in effect thereafter by mutual agreement of [DDC] and [Plaintiff] evidenced by a written extension agreement *executed by [DDC] and [Plaintiff]* prior to the expiration of this Agreement." (MacWhirter Decl. Ex. D, Direct Dealer Agreement art. 5 (emphasis added).) The second states that "[t]he acceptance of orders from [Plaintiff] or the continuance of sale of Products and Parts to [Plaintiff] or any other act of [DDC] after termination of this Agreement *shall not be construed as a renewal* of this Agreement for any further term nor as a waiver of the termination." (*Id.*, Additional Provisions Applicable to Direct Dealer Agreement art. 10.6.2 (emphasis added).) Similarly, the 2012 renewal agreement states it would come into force "only with [DDC]'s written acknowledgement of receipt of its copy of this Agreement." (MacWhirter Decl. Ex. E, Direct Dealer Agreement art. 5.) As previously noted, the renewal agreements are governed by Michigan law.

Under Michigan law, "[t]he cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 603, 576 N.W.2d 392, 395 (1997) (quoting *Klever v. Klever*, 333 Mich. 179, 186, 62 N.W.2d 653, 656

---

[7] 15 U.S.C. § 13(b) (seller may rebut prima facie case of discriminatory pricing "by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.")

(1952)).  Courts ascertain and enforce the parties' intent "according to the plain language of the contract."  *Wassau Underwriters Ins. Co. v. Ajax Paving Indus., Inc.*, 256 Mich. App. 646, 650, 671 N.W.2d 539, 542 (2003) (citing *Zurich Ins. Co.*, 226 Mich. App. at 603–04, 576 N.W.2d at 395); *cf. New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 281 Mich. App. 63, 76, 761 N.W.2d 832, 840 (2008) ("When construing a contract, the goal is to ascertain and enforce the parties' intent on the basis of the plain language of the contract.").  "Clear, unambiguous, and definite contract language must be enforced as written and courts may not write a different contract for the parties or consider extrinsic evidence to determine the parties' intent."  *Wassau Underwriters*, 256 Mich. App. at 650, 671 N.W.2d at 542.

Plaintiff cites case law holding that a signature is "not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or *whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intentions of the parties*."  *Ehresman v. Bultynck & Co.*, 203 Mich. App. 350, 354, 511 N.W.2d 724, 726 (1994) (emphasis added).  Plaintiff asserts that courts determine whether parties have mutually assented using an objective standard, looking "to all the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent."  *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 119, 507 N.W.2d 591, 598 (1993) (quoting *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 641, 437 N.W.2d 268, 273 (1991)).  While this may be true, "a contract does not arise where one party to the proposed agreement *manifests an intent not to be bound until execution of the contract*."  *Angelo Di Ponio Equip. Co. v. Michigan, Dep't of State Highways & Transp.*, 107 Mich. App. 756, 763, 309 N.W.2d 566, 569 (1981).

Here, the 2009 renewal unambiguously contemplates no valid extensions unless *both* parties execute another renewal agreement. That is, both parties manifested an intent not to be bound by a subsequent renewal unless both executed it. The terms of the 2012 renewal require DDC to acknowledge in writing that it received its copy of the agreement before the renewal comes into force. However, the complaint does not allege either that DDC signed the 2012 renewal or that DDC acknowledged receipt of its copy of that renewal. The proposed amended complaint, on the other hand, does appear to allege DDC executed the most recent renewal. (McRory Decl. Ex. A ¶ 20.) Nevertheless, it still does not allege that DDC acknowledged receipt of its copy in writing, whereas the signature page indicates DDC did not sign. (MacWhirter Decl. Ex. E, Electronic Signature Page.)

Accordingly, under the unambiguous terms of both renewal contracts, no contract between the parties existed after December 31, 2012. Plaintiff's assertion that the 2012 renewal came into force by the parties' conduct is expressly precluded by the terms of both renewal agreements. Thus, DDC's motion to dismiss Claim 3 seeking, *inter alia*, specific performance of the Detroit Diesel franchise agreement must be granted. Leave to amend the complaint as to Claim 3 must be denied, as filing an amended complaint would be futile.

## V. CONCLUSION

For the stated reasons, DDC's motion to dismiss is GRANTED. Plaintiff's cross-motion to amend the complaint is GRANTED in part, only to the extent of allowing Plaintiff to add in Claim 2 allegations against DTNA for violations of the Dealer Act due to the termination of the Detroit Diesel franchise, and otherwise DENIED. The Clerk of Court is respectfully requested to terminate the motions (Docs. 19 & 30) and terminate Defendant Detroit Diesel Corporation. Plaintiff is directed to file its amended complaint on or before April 18, 2014.

Dated: April 1, 2014
White Plains, New York

SO ORDERED:

_____ 4/1/14
NELSON S. ROMÁN
United States District Judge